THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE DELA-
WARE AND HUDSON COMPANY, Respondent, v. FRANK W.
STEVENS et al., Constituting THE PUBLIC SERVICE COMMIS-
SION OF THE SECOND DISTRICT OF THE STATE OF NEW YORK,
Appellants.

Public Service Commissions Law — purposes of the act — authority
of commission to regulate the issuing of corporate stocks and
bonds — commission empowered to prevent issuing of securities
for fictitious debts, for the inflation of stocks and bonds or other
improper purposes — commissioners cannot substitute their
judgment for that of stockholders and directors and restrain the
issuing of bonds for bona fide debts or legitimate purposes.

The paramount purpose of the enactment of the Public Service Com-
missions Law was the protection and enforcement of the rights of the
public. One of the legislative purposes in the enactment of the statute
was to prevent the issue of stocks and bonds by public service corpora-
tions, if, upon an investigation of the facts, it was found that they
were not for the purposes of the corporation enumerated by the statute
and reasonably required therefor. It was not, however, designed to
make the commissioners the financial managers of the corporation or
to empower them to substitute their judgment for that of the board of
directors or stockholders as to the wisdom of a transaction.

While the ownership of property ordinarily carries with it the right of
management, the duty devolves upon the owner to so manage as not to
have it become a nuisance or unnecessarily infringe upon the rights of
others. It was, therefore, evidently the legislative intent in the enact-
ment of this provision that the commissioners should have supervision
over the issuing of long-time bonds by the public service corporations

1

enumerated in section 55 of the Public Service Commissions Law to the extent of determining whether they were issued under and in conformity with the provisions of the statute for the purposes mentioned therein, or whether they were issued for the discharge of the actual and not the fictitious debts of the company, or whether they were issued for the refunding of its actual obligations and not for the inflation of its stocks or bonds.   Beyond this the power of the commissioners does not extend, unless it may pertain to the power to determine whether an obligation should be classified as operating expenses and as to whether such expenses should be paid by obligations running beyond a year.

The Public Service Commissions Law (L. 1907, ch. 429, § 55) authorizes a common carrier, upon securing from the proper public service commission an order so to do, to issue stocks, bonds, notes or other evidence of indebtedness, among other things, for the discharge or lawful refunding of its obligations, and authorizes such commission to investigate for the purpose of enabling it to determine whether it should grant such an order.   The relator made an application for an order to issue bonds secured by a mortgage already given for the purpose of paying outstanding indebtedness, the amount and validity of which indebtedness is not questioned.   The indebtedness had accrued by the purchase of securities, which transaction the public service commission regarded as an unfortunate one for the company; that it had paid more than the securities were worth and that the property so acquired had not been included in the mortgage.   Although it conceded that the purchase was lawful and that the notes were valid obligations of the company, the commission withheld consent to the issuing of the bonds.   Relator also applied for leave to issue like bonds to pay indebtedness incurred for the acquisition of other property which was refused, apparently upon the ground that the lands so acquired should have been mortgaged for the purpose of paying such obligations.   *Held*, that the application of the relator to issue the bonds should have been granted.

*People ex rel. D. & H. Co.* v. *Stevens*, 134 App. Div. 99, affirmed.

(Argued November 22, 1909; decided December 7, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 30, 1909, which reversed, annulled and set aside an order of the public service commission refusing the relator's application for leave to issue certain bonds, and remitted the proceedings to said commission for further action.

The facts, so far as material, are stated in the opinion.

*F. W. Stevens, Ledyard P. Hale* and *Edward H. Wells* for appellants.   The commission kept within its powers in

refusing to permit the railroad properties of the Delaware and Hudson Company to be charged with the whole of the cost of the disconnected Hudson Valley street railroad property, to which it had and has no title, without including in the mortgage either the Hudson Valley properties which had been purchased or the property of the United Traction Company, the purchaser and principal debtor; and with one-half the cost of undeveloped coal lands, to which relator has no access except over the lines of other carriers. (Hardcastle on Stat. Law, 65, 66; *Atty.-Gen.* v. *M., etc., Gas Co.,* 179 Mass. 15; *Falmouth* v. *F. W. Co.,* 180 Mass. 325.) The action of the commission herein was right and ought not to have been annulled. (Pub. Serv. Com. Law, § 89; *Falconer* v. *B. & & J. R. R. Co.,* 69 N. Y. 491; *B. & J. R. R. Co.* v. *Falconer,* 103 U. S. 821; *P. E. L. Co.* v. *Vil. of Potsdam,* 49 Misc. Rep. 18; 113 App. Div. 894; *United States ex rel. Atty.-Gen.* v. *D. & H. Co.,* 213 U. S. 366.) Given the construction contended for by appellants, section 55 of the Public Service Commissions Law was within the constitutional power of the legislature. (Const. of N. Y. art. 8, § 1; 1 R. S. ch. 18, tit. 3, § 8; *Saratoga Gas Case,* 191 N. Y. 123; *Trustees of Saratoga Springs* v. *Saratoga Gas, etc., Co.,* 123 App. Div. 203; *Matter of W. G. L. Co.,* 127 App. Div. 462; *Lord* v. *E. L. Ass. Soc.,* 194 N. Y. 212; *People ex rel.* v. *B. & A. R. R. Co.,* 70 N. Y. 569; *People* v. *Budd,* 117 N. Y. 1; *Holden* v. *Hardy,* 169 U. S. 366; *Berea College* v. *Kentucky,* 211 U. S. 45; *Railroad Commission* v. *Central Georgia Ry. Co.,* 170 Fed. Rep. 225.)

*Morgan J. O'Brien* and *Lewis E. Carr* for respondent. Upon the facts submitted by the respondent, the commission should have granted its application, and the Appellate Division rightly reversed the order denying the application, and directed the commission to grant the same. (*People* v. *U. Ins. Co.,* 15 Johns. 358; *Jackson* v. *Collins,* 3 Cow. 89; *McClusky* v. *Cromwell,* 11 N. Y. 593; *Holmes* v. *Carley,* 31 N. Y. 289; *Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1; *Hart*

v. *Cleis,* 8 Johns. 41; *Donaldson* v. *Wood,* 22 Wend. 395; *Pillow* v. *Bushnell,* 5 Barb. 156; *People ex rel. Collins* v. *Spicer,* 99 N. Y. 225; *Dibble* v. *Hathaway,* 11 Hun, 571.) The commission had not the power under section 55 of the Public Service Commissions Law, rightly construed, to deny the application of the respondent upon the grounds stated by the commission, either in the opinions of the commissioners or in its order of December 7, 1908. (*U. S.* v. *D. & H. Co.,* 213 U. S. 366; *Metropolitan Bank* v. *Van Dyck,* 27 N. Y. 400; *People* v. *Supervisors of New York,* 32 N. Y. 473; *Newark* v. *Verona Township,* 59 N. J. L. 94; *Montague* v. *Richardson,* 24 Conn. 338.) If the Public Service Commissions Law conferred upon the commission the unliinited and absolute discretion claimed by it to grant or refuse its consent to the issue of bonds of the respondent embraced in its application, the statute is in that respect unconstitutional as a delegation of legislative power without limitation in its exercise. (*U. S.* v. *D. & H. Co.,* 213 U. S. 366; *Harriman* v. *I. C. Comm.,* 211 U. S. 407; *K. T. I. Co.* v. *Jarman,* 187 U. S. 196; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 252; *S. W. S. Comm.* v. *Curtis,* 192 N. Y. 319; *Barton* v. *Himrod,* 8 N. Y. 493; *Stanton* v. *Supervisors,* 191 N. Y. 428; *C., etc., R. R. Co.* v. *Comm.,* 1 Ohio St. 77; *Locke's Appeal,* 72 Penn. St. 491; *People* v. *L. I. R. R. Co.,* 134 N. Y. 506.)

HAIGHT, J.   The Delaware and Hudson Company, a domestic railroad corporation, in June, 1908, applied to the public service commission for its consent to mortgage its railroad property, rights and franchises pursuant to subdivision ten of section four of the Railroad Law, to secure an issue of $50,000,000 of its first and refunding mortgage gold bonds maturing the first day of May, 1943, and that the company may be permitted to then issue $26,500,000 of its four per cent bonds secured by such mortgage for the purpose of refunding or paying $19,132,500 of its outstanding note obligations and to execute and reserve $6,500,000 of such bonds to pay an equal amount of prior lien bonds secured upon its

railroad properties. The commission, after hearing had, on the 7th day of July, 1908, made an order authorizing the company to execute its mortgage and to set aside $6,500,000 of its four per cent bonds secured by the mortgage for the purpose of retiring an equal amount of its bonds secured by prior liens upon the mortgaged property and that it might issue and sell $13,309,000 of its bonds to be used in paying off outstanding note obligations of the company maturing within twelve months from the date thereof; and that no further issue of bonds be made except upon the consent of the commission upon further application. Thereupon the mortgage was executed and the bonds authorized by the order were issued thereunder and subsequently a further application was made by the company for leave to issue the remaining amount of the bonds asked for in its former petition for the purpose of paying the notes of the company issued for the purchase of the properties of the Troy and New England Company and Hudson Valley Company and a tract of coal lands in Pennsylvania. The hearing upon this application resulted in the commission's granting a permit to issue bonds to pay the Troy and New England Company notes, but it refused the application of the company to issue bonds for the purpose of paying the Hudson Valley notes and the coal land notes. Thereupon the relator, upon its application, was allowed a writ of certiorari, which brings up for review the proceedings of the commission in rejecting the application of the relator for leave to issue bonds to pay the outstanding obligations of the company upon the acquisition of those properties. The facts with reference to them are substantially as follows :

The Delaware and Hudson Company advanced to the Northern New York Development Company the sum of $4,665,295.85, with which that company purchased the stock, bonds and debentures outstanding of the Hudson Valley Railway Company, an electric railroad. This stock and securities were transferred by it to the United Traction Company, which operates electric lines in Albany, Troy, Cohoes and other places, at a fixed price therefor of $7,500,000. In making

6        People ex rel. D. & H. Co. v. Stevens.        [Dec.,

Opinion of the Court, per Haight, J.        [Vol. 197.

this sale the development company agreed to secure certain other securities of the Hudson Valley Railway Company, which was assumed would bring the cost of the Hudson Valley securities up to the sum of $5,000,000. Previous to this the Delaware and Hudson Company purchased fifty thousand shares, the total capital stock of the United Traction Company, and paid therefor $150 per share, which was $50 per share above par. It was then determined by the Delaware and Hudson Company that this premium amounting to $2,500,000 should be repaid to it in new United Traction Company stock and that the United Traction Company should also issue $5,000,000 of stock on account of the Hudson Valley purchase from the development company. To do this it became necessary for the United Traction Company to apply to the board of railroad commissioners for consent to increase its capital stock by the amount of seventy-five thousand shares and from $5,000,000 to $12,500,000 face value. Such application was accordingly made and granted by the board of railroad commissioners, and thereupon the United Traction Company transferred the stock so increased to the Delaware and Hudson Company. The effect of this increase of stock of the traction company was to place the stock which the Delaware and Hudson Company had purchased at $150 per share on a par with that purchased by the development company of the Hudson Valley Company, thus making the stock of the traction company and of the Hudson Valley Company acquired by this transaction $100 per share, that being the amount that had been actually paid therefor by the Delaware and Hudson Company. At that time the Delaware and Hudson Company was the owner of all of the stock of the Northern New York Development Company and of the United Traction Company with the exception of a few shares which had been transferred to individuals in order to qualify them to act as directors. The Delaware and Hudson Company, however, has not as yet paid out the sum of $5,000,000. It has only paid the sum of $4,665,295.85. The balance, so far as the record shows, is still retained by it pre-

sumably for the payment of the remaining outstanding securities of the Hudson Valley Railway Company which it, through the development company, has undertaken to acquire and pay for. The payment, so far as made, was by the issuing of its notes for not exceeding twelve months and the renewal thereof at the expiration of the year at five and six per cent interest. It is these notes now outstanding which the company seeks to have discharged by the issuing of the bonds prayed for in the application.

The Delaware and Hudson Company was originally incorporated under the name of the President, Managers and Company of The Delaware and Hudson Canal Company by an act of the legislature passed in 1823, for the purpose of transporting to market coal from the region in which it was found in the state of Pennsylvania. It was authorized by a statute of Pennsylvania to purchase and to own coal lands, to mine coal and transport the same to market. It thereupon constructed a canal from the Delaware river to the Hudson river and operated the same until it was discontinued by act of the legislature of New York in 1899. By chapter 841 of the Laws of 1867 it was authorized to construct, lease, own and operate railroads, and all the rights, powers and privileges of railroad corporations were conferred upon it, and like authority was given to it in the state of Pennsylvania. Under the authority thus granted it has constructed and acquired and operated a railroad system from Wilkesbarre, in the state of Pennsylvania, to Rouse's Point, in the northern border of the state of New York.

Upon its original incorporation it acquired a large tract of coal lands in the northern part of the anthracite coal regions of the state of Pennsylvania and the mining and transporting of coal to the markets for many years was its chief source of income, and up to the present time has continued to be one of its important industries and sources of revenue. In 1905 the company, believing that coal in the lands owned by it would within another generation become exhausted, purchased another tract of land, which, upon such information as was

then obtainable, contained upwards of four hundred million . tons of coal, upon paying the sum of $5,687,260.53. The money to make such purchase was obtained by the Delaware and Hudson Company by borrowing upon its notes. The notes so issued have all been taken care of, except the sum of $2,500,000, which sum the Delaware and Hudson Company, under the application made to the public service commission, now asks to have discharged by the issuing of bonds under its refunding mortgage. This purchase was authorized by the board of managers of the Delaware and Hudson Company, but the title was taken in the name of the Hudson Coal Company, which company is owned and controlled by the Delaware and Hudson Company.

The provision of the Public Service Commissions Law (L. 1907, chap. 429), under which the application was made to the commission for its consent, is section fifty-five, and so much thereof as is now material provides as follows : " A common carrier, railroad corporation or street railroad corporation organized or existing, or hereafter incorporated, under or by virtue of the laws of the state of New York, may issue stocks, bonds, notes or other evidence of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations, provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue, and the amount thereof and stating that, in the opinion of the commission, the use of the capital to be secured by the issue of such stock, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation.  *  *  *  For the purpose of enabling it to determine whether it should issue such an order, the commission shall make such inquiry or investigation, hold such hearings and examine such witnesses, books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination. Such common car-

rier, railroad corporation or street railroad corporation may issue notes, for proper corporate purposes and not in violation of any provision of this or any other act, payable at periods of not more than twelve months without such consent, but no such notes shall, in whole or in part, directly or indirectly be refunded by any issue of stock or bonds or by any evidence of indebtedness running for more than twelve months without the consent of the proper commission."

The first question arising for our determination pertains to the powers and duties of the commission under the above provisions of the statute. In determining this question we do not propose to now consider the powers and duties of the commission under other sections of the statute. They are numerous and varied, and in some instances the commission may be invested with discretionary powers and in others not.

We understand that the paramount purpose of the enactment of the Public Service Commissions Law was the protection and enforcement of the rights of the public. Public service corporations have been granted valuable franchises to enable them to serve the public, and they are deemed to have undertaken to render to the public the service for which they were incorporated upon receiving a proper and reasonable compensation therefor. It is the duty of railroad corporations not only to maintain their equipment, tracks and roadbed in good order, but also to operate their railroads with safety to the public and afford such service as will supply the reasonable demands of the public. For a generation or more the public has been frequently imposed upon by the issues of stocks and bonds of public service corporations for improper purposes, without actual consideration therefor, by company officers seeking to enrich themselves at the expense of innocent and confiding investors. One of the legislative purposes in the enactment of this statute was to correct this evil by enabling the commission to prevent the issue of such stock and bonds, if upon an investigation of the facts it is found that they were not for the purposes of the corporation enumerated by the statute and reasonably required therefor.

We do not think the legislation alluded to was designed to make the commissioners the financial managers of the corporation, or that it empowered them to substitute their judgment for that of the board of directors or stockholders of the corporation as to the wisdom of a transaction, but that it was designed to make the commissioners the guardians of the public by enabling them to prevent the issue of stock and bonds for other than the statutory purposes; these purposes we have already enumerated in quoting the statute, the last being for the discharge or lawful refunding of its obligations.

In regard to the notes issued for the purpose of acquiring the stock and securities of the Hudson Valley Railway Company, there is no question made with reference to the amount or their validity. Commissioner Decker, in delivering the prevailing opinion, says with reference to these notes that they "are lawful obligations, resting upon the corporation and no matter how the proceeds were expended the debts must be paid. The general credit of the company is pledged in these note issues and that credit is based upon its income not only from the railroad but from its coal operations and its other properties including securities of other companies. These notes are being carried now necessarily on short terms, one year or less, and the interest charges are comparatively high. It is important that they should be discharged by actual payment or evidences of debt running for a period of more than one year. The obligations were contracted in the exercise of a legal right by the corporation and the proceeds were devoted to the purchase of securities at a time when the corporation was entitled to acquire the stock of other railroad corporations and street railroad corporations without asking permission to do so from any board or tribunal. This commission is without power to require the corporation to divest itself of title to these or any securities or property and the law now in force specifically declares that its provisions shall not be construed to prevent the holding of stock heretofore lawfully acquired. In that respect only do note obligations, created prior to the Public Service Commissions

Law, to raise funds with which to acquire property, including railroad securities, differ in character and the treatment they must receive from such obligations issued after that law became effective. Under that statute a railroad corporation or street railroad corporation may not purchase or take over the stock of another such corporation without first obtaining the consent of this commission. We must, therefore, treat the acquirement of these traction securities as a thing accomplished and for the purposes of this case as a lawful act."

The learned commissioner, however, reaches the conclusion that, notwithstanding the fact that the transaction was lawful, and that the notes were the valid obligations of the corporation, the purchase of the Hudson Valley securities was an unfortunate one for the company ; that it paid for the securities more than they were worth and that the property so acquired has not been included in the mortgage. They consequently withheld their consent to the issuing of the bonds ; but suggested that a mortgage might be executed by the United Traction Company, the present owner of the Hudson Valley Railway Company, upon the property acquired from that company for the retirement of such obligations. This, we think, would be substituting the judgment and discretion of the commissioners for that of the directors and stockholders of the corporation. If such was the purpose and intent of the statute a doubt might arise with reference to its constitutionality. For, ordinarily, the ownership of property carries with it the right of occupancy and management, and should a statute deprive the owner of the right to manage, it would, under ordinary circumstances, undermine his right to protect and make his property remunerative. (*Lord* v. *Equitable Life Assur. Society*, 194 N. Y. 212.) As we have seen, the stockholders have voted in favor of issuing the mortgage for the security of the bonds which are here sought to be issued. The commission has given its consent that such mortgage should be executed, and the directors, in accordance therewith, have executed a mortgage upon which upwards of $13,000,000 in bonds have already been issued. It appears

from the finding of the commissioners, as stated in their opinion, that the Hudson Valley Railway Company's properties are of uncertain value, and that the purchase of the stock and securities of the company by the relator was unwise and should not have been made. Assuming that the purchase was unfortunate and that the company has lost heavily thereby, still the commissioners conceded that it was made at a time when no consent of the railroad commissioners or of the public service commission was required, and that, therefore, the purchase was legal, and one which the company had the right to make. But if the property so acquired is of uncertain value and the road is unable to pay running expenses, it might well be good judgment on the part of the Delaware and Hudson Company not to attempt to relieve itself from the burden of paying the notes by an attempt to issue mortgage bonds based upon the security which that property affords. The notes which the company had issued, as we have seen, bear interest at a high rate. They were given for the acquisition of property, which is one of the four purposes designated by the statute for which bonds may be authorized to issue. Having been given for the acquiring of the property of another railroad they are properly classified as capital and are, therefore, brought within the express provisions of the statute under which the application was made. While, as we have stated, the ownership of property ordinarily carries with it the right of management, the duty devolves upon the owner to so manage as not to have it become a nuisance or unnecessarily infringe upon the rights of others. It was, therefore, evidently the legislative intent in the enactment of this provision that the commissioners should have supervision over the issuing of long-time bonds to the extent of determining whether they were issued under and in conformity with the provisions of the statute for the purposes mentioned therein, or whether they were issued for the discharge of the actual and not the fictitious debts of the company, or whether they were issued for the refunding of its actual obligations and not for the inflation of its stocks or

bonds.   Beyond this it appears to us that the power of the
commissioners does not extend, unless it may pertain to the
power to determine whether an obligation should be classified
as operating expenses and as to whether such expenses should
be paid by obligations running beyond a year.   We, there-
fore, conclude that as to the Hudson Valley securities,
so called, the application of the relator company should have
been granted.

The notes issued by the Delaware and Hudson Company in
payment for the purchase of coal lands are also conceded to
be valid obligations of the company.   They were given for
the acquisition of property.   They are one-year notes bearing
a high rate of interest and are obligations which it is desir-
able should be either paid or secured upon long-term bonds
of low rate of interest.   These lands have been purchased for
future mining operations to be resorted to after the coal in
the present mines of the company becomes exhausted.   The
lands so acquired or the amount paid therefor becomes the
capital of the company.   It is true that the title has been
taken in the name of another corporation, which is owned and
controlled by the Delaware and Hudson Company.   As we
have seen, these lands were located in another state and it may
have been thought advisable to have the title vest in a cor-
poration organized in that state, but the reason for so vesting
the title does not appear to us to be important; for, conced-
edly, the Delaware and Hudson company has become obli-
gated to pay for such purchase, and it ultimately is to receive
the profits derived therefrom.   The commissioners appear to
have entertained the view that these lands should have been
mortgaged for the purpose of paying the obligations.   In
that respect their judgment differs from that of the directors
of the corporation.   These lands at present are inaccessible
for mining purposes.   In order to make them available a
railroad forty or fifty miles in length will have to be con-
structed.   It is estimated, as we have seen, that these lands
will produce four hundred million tons of coal; but this is an
estimate only.   A vein of coal when discovered may yield a

large quantity of coal and it may run out after the production of a very few tons. Bonds issued upon such securities are not always as easily marketable as those upon well-known railroads earning annually a large surplus. However that may be, we are of the opinion that the question presented is the same in this case as that which was presented with reference to the Hudson Valley securities, and that the application of the relator should have been granted.

The order of the Appellate Division should be affirmed, with costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WERNER and CHASE, JJ., concur.

Order affirmed.