In the Matter of: LACLEDE GAS COMPANY'S VERIFIED APPLICATION TO RE-ESTABLISH AND EXTEND THE FINANCING AUTHORITY PREVIOUSLY APPROVED BY THE COMMISSION, Appellant,

v.

MISSOURI PUBLIC SERVICE COMMISSION; Office of Public Counsel, Respondents.

WD 79558

Missouri Court of Appeals, Western District.

Filed: May 30, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2017

---

Paul Boudreau, Jefferson City and Rick Zucker, St. Louis for appellant.

Shelley Brueggemann, Jeffrey Keevil, Jennifer Heintz, Jefferson City for PSC.

James Owen, Columbia, and Timothy Opitz, Jefferson City for Office of Public Counsel.

Before Division Three: Alok Ahuja, P.J., and Victor C. Howard and James E. Welsh, JJ.

Alok Ahuja, Judge

Laclede Gas Company applied to the Public Service Commission (the "PSC" or "Commission") for authority to issue long-term financing. The Commission granted Laclede only part of the financing authority it requested. Laclede appeals. We affirm.

### Factual Background

Laclede is a public utility which distributes, transports, and sells natural gas to approximately 640,000 retail customers in eastern Missouri, and approximately 500,-000 customers in western Missouri under the name Missouri Gas Energy. Laclede is subject to the Commission's jurisdiction.

Pursuant to § 393.200,[1] Laclede must seek PSC approval for the issuance of

1. Statutory citations refer to the 2016 edition of the Revised Statutes of Missouri.

long-term financing. On April 15, 2015, Laclede applied for authority to issue up to $550 million in long-term financing through September 30, 2018. Staff opposed the petition and recommended that the PSC approve financing authority of only $300 million.

The PSC held an evidentiary hearing, and issued its Report and Order on February 10, 2016. In its order the Commission concluded that "Laclede's currently-known financing needs are less than the amount of the authority requested," and that Laclede "only expects to issue $300 million in financing between [the date of the order] and 2018." The Commission found that, although "Laclede anticipates approximately $550 million in capital expenditures" during the relevant time period, it "expects to cover $250 million of this amount through operating cash flow rather than through financing." The Commission noted that, in presentations to rating agencies, Laclede had stated that it expected to issue $300 million in long-term financing through 2018. The Commission also noted that $370 million of the authority the Commission had approved in Laclede's prior financing case remained unissued.

Based on its findings, the PSC authorized Laclede to issue $300 million in long-term financing for the specified purposes of "refinancing short-term debt, funding capital expenditures, and retiring long-term debt schedule to mature." Because Laclede had no current plans to issue the remaining $250 million in financing for which it had requested authorization, the PSC declined to authorize that additional amount simply to give Laclede the "flexibility" to respond to unknown future developments in the industry or in financial markets. The PSC adopted the conclusion of its order in Laclede's 2010 financing case, where it denied Laclede's request for additional long-term financing authority to

afford the company such financial "flexibility." The PSC noted that Laclede was free to make future requests for additional financing authority in a "specified amount supported by a specified purpose as the law requires."

Laclede appeals.

## Standard of Review

Pursuant to section 386.510, the appellate standard of review of a PSC order is two-pronged: first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable. The burden of proof is upon the appellant to show that the order or decision of the PSC is unlawful or unreasonable. The lawfulness of a PSC order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo. An order's reasonableness depends on whether it is supported by substantial and competent evidence on the whole record, and the appellate court considers the evidence together with all reasonable supporting inferences in the light most favorable to the Commission's order. The Commission's factual findings are presumptively correct, and if substantial evidence supports either of two conflicting factual conclusions, the Court is bound by the findings of the administrative tribunal. *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 734-35 (Mo. banc 2003)(footnotes omitted); *see also State ex rel. Union Elec. Co. v. Pub. Serv. Comm'n*, 399 S.W.3d 467, 476 (Mo. App. W.D. 2013).

## Analysis

### I.

Laclede argues that the PSC's Report and Order was unlawful because § 393.200.1 requires the Commission to

approve any request for long-term financing authority so long as the utility demonstrates that the financing proceeds will be used for one of the purposes enumerated in the statute. We disagree.

Section 393.180 specifies that a public utility's use of long-term financing mechanisms is a "special privilege" subject to State regulation and control:

> The power of gas corporations, electrical corporations, water corporations, or sewer corporations to issue stocks, bonds, notes and other evidences of indebtedness and to create liens upon their property situated in this state is a special privilege, the right of supervision, regulation, restriction and control of which is and shall continue to be vested in the state, and such power shall be exercised as provided by law and under such rules and regulations as the commission may prescribe.

Section 393.200.1 details the circumstances in which the Commission may authorize a public utility to issue long-term financing. It provides:

> A gas corporation, electrical corporation, water corporation or sewer corporation organized or existing or hereafter incorporated under or by virtue of the laws of this state may issue stocks, bonds, notes or other evidences of indebtedness payable at periods of more than twelve months after the date thereof, *when necessary* for the acquisition of property, the construction, completion, extension or improvement of its plant or system, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations or for the reimbursement of moneys actually expended from income, or from any other moneys in the treasury of the corporation not secured or obtained from the issue of stocks, bonds, notes or other evidence of indebtedness of such corporation, within five years next prior to the filing of an application with the commission for the required authorization, for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditure in such manner as to enable the commission to ascertain the amount of money so expended and the purposes for which such expenditure was made; provided, and not otherwise, that there shall have been secured from the commission an order authorizing such issue, and the amount thereof, and stating the purposes to which the issue or proceeds thereof are to be applied, and that, in the opinion of the commission, the money, property or labor to be procured or paid for by the issue of such stock, bonds, notes or other evidence of indebtedness *is or has been reasonably required for the purposes specified in the order,* and that except as otherwise permitted in the order in the case of bonds, notes and other evidence of indebtedness, such purposes are not in whole or in part reasonably chargeable to operating expenses or to income.

(Emphasis added.)

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 430 (Mo. banc 2016) (citation and internal quotation marks omitted). Here, § 393.180 specifies that issuance of debt and equity by a public utility is a "special privilege," which is subject to the State's "supervision, regulation, restriction and control." The plain language of § 393.200.1 authorizes public utilities to issue long-term fi-

nancing only "when necessary" for the enumerated purposes. Further, the statute provides that the PSC may authorize the issuance of long-term financing only if it determines that "the money, property or labor to be procured or paid for by the issue of such" long-term financing "is . . . reasonably required for the purposes specified."

Based on the text of §§ 393.180 and 393.200, we reject Laclede's contention that the PSC's authority is limited to determining whether requested financing would be employed for one of the purposes enumerated in the statute (property acquisition; plant construction or improvement; service improvement or maintenance; or the refunding or discharge of existing obligations). The Commission was not required to grant Laclede the full financing authority it requested, simply because Laclede proved that it planned to expend $550 million on the activities enumerated in § 393.200.1. Instead, Laclede was also required to make some showing that the use of long-term financing was "necessary" or "reasonably required" to fund its planned activities.

Section 393.200 was first adopted in Missouri in 1913, and was modeled after § 69 of New York's Public Service Law. "One of the well-established rules of statutory construction is that when a state borrows a statute from another state and enacts it into law, the borrowing state also adopts the interpretation placed thereon prior to the time of enactment in the borrowing state by the courts of the state from which the statute was taken." *State ex rel. Philipp Transit Lines, Inc. v. Pub. Serv. Comm'n*, 552 S.W.2d 696, 700 (Mo. banc 1977).

Laclede contends that two pre-1913 New York judicial opinions establish that the Commission had no authority to second-guess Laclede's business judgment that it

would be prudent to have additional financing authority available to respond to future market developments. Those cases emphasize that New York's counterpart to § 393.200 does not authorize the public service commission to reject the business judgments of a utility's management concerning the advisability of particular financial transactions. Thus, the New York Court of Appeals explained that the purpose of § 69 of New York's Public Service Law was to

enable[e] the commission to prevent the issue of such stock and bonds, if upon an investigation of the facts it is found that they were not for the purpose of the corporation enumerated by the statute and reasonably required therefor. We do not think the legislation alluded to was designed to make the commissioners the financial managers of the corporation, or that it empowered them to substitute their judgment for that of the board of directors or stockholders of the corporation as to the wisdom of a transaction, but that it was designed to make the commissioners the guardians of the public by enabling them to prevent the issue of stock and bonds for other than the statutory purposes.

. . . .

. . . It was therefore evidently the legislative intent in the enactment of this provision that the commissioners should have supervision over the issuing of long-time bonds to the extent of determining whether they were issued under and in conformity with the provisions of the statute for the purposes mentioned therein, or whether they were issued for the discharge of the actual and not the fictitious debts of the company, or whether they were issued for the refunding of its actual obligations and not for the inflation of its stocks or bonds. Beyond this it appears to us that the

power of the commissioners does not extend, unless it may pertain to the power to determine whether an obligation should be classified as operating expenses and as to whether such expenses should be paid by obligations running beyond a year.

*People ex rel. Del. & Hudson Co. v. Stevens*, 197 N.Y. 1, 90 N.E. 60, 63, 64 (1909); *see also People ex rel. Binghamton Light, Heat & Power Co. v. Stevens*, 203 N.Y. 7, 96 N.E. 114, 117 (1911).

The New York cases do not justify reversal here. First, although § 69 of the New York Public Service Law is apparently the model for § 393.200, it does not appear that New York statutes contain an analogue to § 393.180, which specifies that—in Missouri—a public utility's issuance of debt and equity is a "special privilege" subject to the State's "supervision, regulation, restriction and control." The scope of a utility's management authority over financing decisions is limited in Missouri by § 393.180. Because New York apparently lacks a similar provision, the breadth of management prerogatives under New York law is of limited relevance here.

In addition, although the New York cases emphasize that the primary function of the state regulatory agency is to verify that a utility's past or planned future activities fall within the purposes specified in the statute, those cases also recognize that the commission must prevent the issuance of long-term financing where it determines that such financing is not "reasonably required" to accomplish the statutory purposes. *Del. & Hudson Co.*, 90 N.E. at 63. In another pre-1913 case, the Appellate Division of New York's Supreme Court made clear that regulators should deny authority for any portion of a financing request which was not "reasonably re-

quired" to achieve the purposes listed in the statute:

> [T]he commission, when application is made to it to approve of an issue of securities, is not obliged to consent or refuse consent to the whole application as presented, but may authorize the issue of such securities as it deems to be reasonably required for the enumerated purposes of the corporation, and refuse its consent to the remainder of the issue desired to be made.

*People ex rel. Long Acre Elec. Light & Power Co. v. Pub. Serv. Comm'n*, 137 A.D. 810, 122 N.Y.S. 641, 645 (1910). The court explained that, even after the commission determined that particular activities qualified for long-term financing authority, its work was not done:

> The purposes for which the relator seeks to issue its stock and bonds are all within the purposes enumerated by statute.... The question before the commission, therefore, was whether or not the issues sought to be made, or any part thereof, were reasonably necessary for such purposes.

*Id.*

■ Laclede stresses that the Commission found that the additional financing authority Laclede requested fell within the purposes specified in § 393.200.1. The Commission's decision, however, was not based on a determination that Laclede intended to use the contemplated financing for improper purposes. Instead, the Report and Order found that Laclede only had current plans to issue $300 million in long-term financing to fund its planned activities; it intended to fund the remainder of its foreseeable expenditures through cash flow generated by operations. While Laclede identified eligible expenditures totaling $550 million, the Commission found that it had failed to demonstrate that long-term financing was "necessary" or "rea-

sonably required" to fund those expenditures. As explained above, § 393.130.1 plainly requires a utility to demonstrate the necessity of long-term financing in order to obtain Commission authorization for such financing.

■ The PSC's determination that Laclede had failed to show that the additional long-term financing was "reasonably required" is supported by competent and substantial evidence. As the Commission's Report and Order noted, Laclede had told rating agencies that it intended to issue only $300 million in long-term financing during the relevant period, and it had failed to exercise $370 million of the financing authority granted in its previous financing case. Moreover, in her pre-filed direct testimony, Laclede's Treasurer Lynn Rawlings acknowledged that "[c]urrently known financing needs are less than the amount of authority requested." Ms. Rawlings contended that the additional financing authority was justified solely to permit Laclede to respond to unanticipated future events: "[i]t is always possible that Laclede will indeed have to exercise such authority in the event there are unexpected and dramatic changes in the capital markets, revisions in accounting rules such as those relating to operating versus capital leases, and unexpected changes in anticipated financing requirements." Laclede's briefing on appeal similarly admits that "Laclede's management recognized it will not need long-term financing for all of its capital expenditures." Laclede acknowledges that is has "current plans to issue $300 million in long-term financing," and that it seeks the additional financing authority only because future "events could occur—such as a need for increased capital expenditures or changes in accounting rules—that would require it to finance more than $300 million." Laclede characterizes the additional $250 million in fi-

nancing authority as "contingent financing."

Laclede's own description of its current financial plans supports the Commission's finding that the additional financing authority is not "necessary," or "reasonably required," at the present time. By Laclede's own admission, the additional financing authority would only become necessary if future events—currently hypothetical— were to occur. The Commission acted lawfully in concluding that Laclede had failed to establish an entitlement to authorization for its "contingent financing" request. Despite Laclede's protestations, the PSC did not substitute its judgment for Laclede's; instead, the Commission deferred to the judgment of Laclede's management that the additional financing authority was not *currently* needed. The Commission's decision is fully consistent with the relevant statutes.

## II.

■ Laclede also argues that the Commission's decision was arbitrary and capricious, because the Commission's Report and Order is inconsistent with its decision on Laclede's 2010 financing request.

■ The PSC is not bound by its previous decisions, so long as its current decision is not otherwise unreasonable or unlawful. *In re Laclede Gas Co.*, 417 S.W.3d 815, 822 n.11 (Mo. App. W.D. 2014); *State ex rel. Aquila, Inc. v. Pub. Serv. Comm'n*, 326 S.W.3d 20, 32 (Mo. App. W.D. 2010). Laclede argues that the Commission's decision was arbitrary and capricious, and thus unreasonable, because the Commission failed to acknowledge the inconsistency between its current decision and its decision in 2010, and failed to explain its departure from the earlier decision.

We see no inconsistency between the Commission's 2010 and 2016 decisions. In its 2010 decision, the PSC refused to grant

Laclede $82 million in financing authority for "flexibility," which the Commission characterized as "[a] business's capacity to quickly exercise business judgment about issuing long-term finance instruments ... in response to changing market conditions." The Commission's 2010 decision recognized that such financial flexibility could allow a utility to save consumers money by taking advantage of short-term market fluctuations. It nevertheless agreed with PSC Staff that, with respect to the $82 million in requested "flexibility," "Laclede has not shown that such amount is, or has been, necessary or reasonably required for any of the allowed purposes."

Laclede's current financing authority request presented the same issue the Commission had decided in 2010: whether Laclede should be given financing authority it did not presently anticipate using, to hold "in reserve" in case of unknown future market developments. The Commission resolved that issue precisely as it had in 2010: by concluding that, with respect to its "contingent financing" request, Laclede had failed to demonstrate that long-term financing was "necessary" or "reasonably required."

There is no inconsistency between the PSC's 2010 and 2016 orders. We reject Laclede's argument that the Commission's decision is arbitrary and capricious because of such an inconsistency.

## Conclusion

The Public Service Commission's Report and Order is affirmed.

All concur.