# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 25, 1913.

PHILIP D. LAIRD, ET AL.,
VS.
THE BALTIMORE AND OHIO
RAILROAD COMPANY.

*W. Cabell Bruce* for plaintiff.

*H. L. Bond, Jr.,* and *H. R. Preston* for defendant.

GORTER, J.—

The bill in this case was filed by the Public Service Commission of Mary-land against the Baltimore and Ohio Railroad Company. The bill alleges that the Company is about to issue bonds to the extent of $63,250,000, for the acquisition of property, the construction, completion, extension, improvement and maintenance of its facilities and its service, and the discharge and lawful refunding of its obligations. And that the Company is about to do this without applying for and securing from the Public Service Commission an order authorizing such issue, and the amount thereof, and stating that, in the opinion of the Commission, the use of the capital to be secured by the issue of such bonds is reasonably required for the said purposes of the said Company.

Section 27 of chapter 180 of the Acts of the General Assembly of Maryland, passed in the year 1910, known as the Public Service Commission Law, provides as follows:

Section 27. And be it further enacted, That a common carrier, railroad corporation, street railroad corporation, or other corporation subject to the provisions of this Act, organized or existing, or hereafter incorporated under or by virtue of the laws of the State of Maryland, may issue stock, bonds, notes or other evidence of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance, extension or improvement of its facilities, or for the improvement or maintenance of its service, or the discharge or lawful refunding of its obligations; provided, and not otherwise, that there shall have been secured from the Commission an order authorizing such issue, and the amount thereof, and stating that, in the opinion of the Commission, the use of the capital to be secured by the issue of such stocks, bonds or other evidence of indebtedness is reasonably required for the said purposes of the common carrier, railroad corporation, street railroad corporation, or such corporations.

The bill prays for a preliminary injunction restraining the defendant from issuing the bonds until there shall have been secured from the Public Service Commission an order authorizing such issue, in accordance

with the law providing therefor. The bill makes the defendant's charter a part thereof. The answer of the defendant, after referring to its charter and the organization of the Company thereunder in paragraph 5, quotes from its charter as follows:

"By section 2 of said Act of Maryland of 1826, it is provided that the capital stock of said company shall be $3,000,000 in shares of $100 each, of which 10,000 shares were reserved for subscription by the State of Maryland and 5,000 shares for the City of Baltimore for 12 months after the passage of the Act."

Said Act further provides as follows:

"Sec. 13. And be it enacted, That if the capital stock of said company shall be deemed insufficient for the purposes of this Act, it shall and may be lawful for the President and Directors of said Company, or a majority of them, from time to time to increase the said capital stock by the addition of as many shares as they may deem necessary, for which they may, at their option, cause subscriptions to be received in the manner prescribed by them, or may sell the same for the benefit of the company, for any sum not under their par value, and that they, or a majority of them, shall have power to borrow money for the objects of this Act, to issue certificates or other evidences of such loans, and to pledge the property of the Company for the payment of the same, and its interest."

By an Act passed March 6, 1846, being chapter 313 of the Acts of 1846, entitled An Act Supplementary to an Act to Incorporate the Baltimore and Ohio Railroad Company, it is provided as follows:

"Be it enacted by the General Assembly of Maryland, That in exercising the authority given to the Baltimore and Ohio Railroad Company, by the Act passed at December session, eighteen hundred and twenty-six, chapter one hundred and twenty-three, to which this is a supplement, to borrow money for the objects of the said Act, the President and Directors of the said Company, or a majority of them, shall be and they are hereby authorized to make and to execute bonds or certificates of indebtedness under the seal of said Company for such sum or sums, and payable at such time or

times, and to sell and dispose of the same on such terms as to the said President and Directors may seem proper; provided, that nothing herein contained shall be taken to authorize the said company to issue anything in the nature of a bank note, or other papers, to be used for circulation as a currency."

I quote from the answer from paragraph 9:

"Your respondent requires additional capital for the improvements of its railroads, terminals and other property, and for additions thereto, to enable it to perform its duties as a common carrier in the most efficient way. Your respondent has now under construction certain necessary improvements which require large expenditures for their completion, and the work thereon cannot be stopped without injury to the business of your respondent and great loss to it. Other improvements in the States of Maryland and West Virginia have been authorized by said President and Directors and are necessary, in their opinion, for the proper conduct of your respondent's business and are to be done as soon as the money for their construction is secured.

"Your respondent has made large improvements and additions to its railroads and property within the past three years and has acquired a large amount of additional equipment, and has heretofore issued its obligations to a large amount to provide money for these purposes, and these obligations are shortly to become due.

The President and Directors of your respondent have decided that additional money for the above purposes can best be secured by the issue of convertible bonds, as above set forth, and that it is necessary that such bonds be issued to the amount of $63,-250,000, and that sufficient capital stock be authorized and set aside to convert the same, as aforesaid."

To a great extent this decision depends upon the construction to be put upon section 27 of the Act of 1910. If that section means, what the eleventh paragraph of the answer says the Commission considers and claims it does, viz: "That the Commission is authorized to determine what expenditures are necessary to be made, and the amount, and the kind and character of the improvements and property

to be made and acquired, and the price at which the security shall be sold, and the use of the proceeds realized therefrom," it will lead to one conclusion. While if it means that the Commission only has the power to see that the bonds are issued in good faith for the purposes set forth, and not for fictitious debts, or for the inflation of the securities of the Company or for any other fraudulent purpose, it will lead to a different conclusion.

The first seems to me to be a most unreasonable construction to be put upon the law. It would be little short of absurd to say that a commission formed as a commission is should have the power given to it to review and revise the judgment of the President and Directors of a great public service corporation like the Baltimore and Ohio Railroad Company. The law cannot mean that the judgment of those highly trained, skilled and experienced, in matters that one can know little or nothing about without special training and experience, is to be approved or disapproved, modified or set at naught by a commission, who, in the nature of things, can have little or no special knowledge upon the subject. If such construction were put upon the provisions of Section 27 they would, in my opinion, be most unreasonable and not within the police power of the State. It would be difficult to see in them any connection with the public health, safety, morals or comfort, but only an effort to regulate or rather control in an unreasonable manner those acts of a corporation that are essential to its success, if not to its very existence. The section would practically repeal the powers given to the President and Directors by the Charter of the Company and be in conflict with the contract clause of the Constitution of the United States.

The second construction strikes me as a correct one. It is the construction put upon this section of the act by the Court of Appeals of New York in the case of State ex rel. Del. & Hud. R. Co. vs. Public Service Commission, 197 N. Y. 1. Giving the law this construction, there would be no impairment of the charter of the Company, for the Company never had the power to issue bonds for a fraudulent purpose. But if it did, this legislation, thus intended to prevent the dishonest issue of corporate securities, would un-

doubtedly be within the police power of the state. I am of the opinion that the provisions of Section 27 of the Public Service Commission Law give to the Commission only the power to see that bonds are not issued for fictitious debts or for the inflation of securities or for any fraudulent or dishonest purpose, and that it does not authorize the Commission to substitute their judgment for that of the President and Directors of the Company as to what expenditures are necessary to be made and the amount, kind and character of improvements and property to be made and acquired, and the price at which the securities are to be sold, and the use of the proceeds realized therefrom.