In the Matter of the Application of NEW YORK STATE ELECTRIC CORPORATION, Petitioner, for a Certiorari Order against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK (State Division, Department of Public Service of the State of New York) and Others, Respondents.

Third Department, September 19, 1929.

*Randall J. LeBoeuf*, for the petitioner.

*Charles G. Blakeslee* [*Russell B. Burnside* of counsel], for the respondent Public Service Commission.

WHITMYER, J. The application was for leave to issue and sell 38,250 shares of common capital stock, at $60 per share, to produce the sum of $2,295,000, for extensions and improvements. New York Electric Company is ready, able and willing to buy. Authority was granted to issue and sell 30,810 shares, to produce $1,848,600, but not to New York Electric Company. A certiorari by that company is pending. The order under review was made on July 11, 1928. At that time a proceeding was pending for consent to New York Electric Company to acquire 41,884 shares of the preferred capital stock of New York State Gas and Electric Corporation. That stock is without voting power as to directors and management; 4,600 shares of the common stock, which had the voting power in those respects, had already been transferred, without any application or consent. The entire capital stock consisted of 46,484 shares, so that the company is seeking to acquire all of the stock. That application was denied on July 31, 1928, and a certiorari to review that determination is also pending. The proceedings are related. New York State Electric

Corporation was organized under the Transportation Corporations Law of the State of New York and is a gas and electric corporation. It is the successor of New York State Gas and Electric Corporation, a New York transportation corporation, which succeeded Ithaca Gas Light Company, incorporated in 1852, to furnish service in Ithaca, N. Y. New York Electric Company is a stock corporation and is not a gas or electrical or street railroad corporation. It was organized under the laws of Delaware, with the right to acquire, take and hold the stock of other corporations, including New York State Electric Corporation. The several companies or corporations are subsidiaries of the Associated Gas and Electric Company, a New York State holding company, which owned the entire capital stock of New York State Gas and Electric Corporation, and filed a certificate for an increase to 10,000 shares common, no par, with voting power, and 90,000 preferred, no par, and without voting power, whereupon the former shares were exchanged for the same number of new ones and immediately transferred to New York Electric Company. At the time of the application, New York Electric Company had 4,600 shares of the common stock, without par and with the voting power, as stated, and the Associated Gas and Electric Company owned all of the preferred, 41,884 shares. And, at that time, New York State Electric Corporation owned upwards of ninety-nine per cent of the common stock of Staten Island Edison Corporation. According to the petition, the funds are to be used partly for New York State Electric Corporation and partly for Staten Island Edison Corporation and it is alleged that the stock of New York State Electric Corporation has not been in the market for sale in the last year. There was no hearing. In its opinion the Commission said, as to the 38,250 shares, that the issue might be authorized, but that leave to sell to New York Electric Company should be denied, otherwise that the result would be that New York Electric Company would acquire control of all the property, business and affairs, not only of New York State Electric Corporation, but also of Staten Island Edison Corporation, in contravention of the plain purpose and intent of section 70 of the Public Service Commission Law. The applications were under section 69 (as amd. by Laws of 1921, chap. 134), relating to the issue, and under section 70 (as amd. by Laws of 1921, chap. 134), relating to the sale. An issue of 30,810 shares was authorized, but consent to sell to New York Electric Company was denied. The questions arise under section 70. The section prohibits the transfer or lease, or a contract for operation, by a gas or electrical corporation of its franchise, works or system, without the written consent of the

Commission. Next, it prohibits such a corporation from acquiring, directly or indirectly, the stocks or bonds of any other corporation engaged in the same or a similar business, unless authorized by the Commission. And, then, it provides that no stock corporation of any description, domestic or foreign, other than a gas or electrical or street railroad corporation, shall purchase, or acquire, take or hold, more than ten per centum of the total capital stock issued by any gas or electrical corporation organized or existing under the laws of the State, except that a corporation, now holding a majority of such capital stock, may, with the consent of the Commission, acquire and hold the remainder, provided that, with the consent of the Commission and upon such terms and conditions as it may fix and impose, any such stock corporation may acquire, take and hold more than ten per centum of the stock of any such gas or electrical corporation, provided it is operated wholly outside of the territory embraced within the former First Public Service Commission district. The questions raised relate to the ten per cent limitation and the proviso relating to operation wholly outside of the territory within the former First Public Service Commission district. Lack of power is assigned as the reason for the determination which was made. The total capital stock consisted of 46,484 shares, namely, 4,600 common, and 41,884 preferred. The common was less than ten per cent of the total. It had the unqualified and unrestricted right to vote for the directors and in the management, but the preferred was not without voting power. If the common had the actual control, the limitation was not violated, since that is based upon total capital stock issued and not upon total capital voting stock. The language is plain and construction is not required. If total capital voting stock was intended, it is for the Legislature to say so. Moreover, the holding of this stock, if illegal, is not a valid reason for denying the request to sell the new issue to New York Electric Company. Under its charter, the company could acquire and hold stock. It is a business corporation, not a gas or electrical or street railroad corporation. The decision in *Matter of New York-New Jersey Super-Power Connecting Corp.* v. *Public Service Commission* (215 App. Div. 578) is not to the contrary. That case was under the portion of the section which prohibited a gas or electrical corporation from acquiring, directly or indirectly, the stock or bonds of any other corporation, incorporated for or engaged in the same or similar business, unless authorized so to do by the Commission. And the decision was based on the ground that the petitioner had failed to establish that it was an electrical corporation within the meaning

of subdivision 13 of section 2 of the Public Service Commission Law, and not on the ground that it was a foreign corporation. Ownership and operating territory, contrary to the proviso, are the objections in the matter of Staten Island Edison Corporation stock. New York State Electric Corporation now owns over ninety-nine per cent of the stock and approval of such ownership may be inferred from the fact that the Commission has authorized the issue and sale of additional stock. The evidence does not show the territory of the operations. Apparently, the Commission has assumed, from the name, that it is within the territory mentioned in the proviso. Associated Gas and Electric Company, the parent corporation, a New York corporation, owned all of the stock of New York State Gas and Electric Corporation, which acquired and was the owner of said stock of Staten Island Edison Corporation, when its name was changed to New York State Electric Corporation. In principle, ownership by New York Electric Company does not differ from ownership by Associated Gas and Electric Company. And it is the stock of New York State Gas and Electric Corporation now New York State Electric Corporation, which was acquired by New York Electric Company, not the stock of Staten Island Edison Corporation. Thus, it must be found that New York State Gas and Electric Corporation, now New York State Electric Corporation, is operated contrary to the proviso. That is not found. Moreover, ownership of stock does not give an interest in the specific assets of Staten Island Edison Corporation. Those assets belong to the corporate entity, which is required to operate the property and is responsible to the Commission therefor, and the evidence does not show that it has not so operated. In *Berkey* v. *Third Avenue R. Co.* (244 N. Y. 84) it was held that the evidence failed to show that the parent company was operating the subsidiary. The parent company owned substantially all of the stock of the subsidiary, the members of the two boards of directors were nearly the same, the parent had made loans to the subsidiary from time to time for construction and operating expenses, and cars, marked in the same way, were used over the entire system. That case is controlling here. Public policy is also assigned as a reason for the refusal, but that question is not involved, if there has been compliance with law. While consent is required for various acts, the Commission may not refuse, arbitrarily or unreasonably. Leave to issue and to sell the stock was granted, so that the necessity therefor was found, but leave to sell to a company, ready, able and willing to buy, was refused. Thus, a sale in the market will

be necessary and may result in no sale or in one for an insufficient price, so that it may become impossible to carry out the necessary extensions and improvements. And injury to the public may result. To prevent a foreign company from acquiring control of a State utility is assigned as the reason, but the State utility, which is the operating company, is subject to the regulatory powers of the Commission, and the Commission will have power to protect it as well as the public. Under the law and the facts, the refusal was unreasonable.

The determination should be annulled, with fifty dollars costs, and the matter should be remitted to the Commission to proceed in accordance with this opinion.

HINMAN and HASBROUCK, JJ., concur; VAN KIRK, P. J., dissents, with an opinion in which HILL, J., concurs.

VAN KIRK, P. J. (dissenting). There are four corporations interested. Three of these, the New York State Electric Corporation, herein called the petitioner; the Associated Gas and Electric Corporation, herein called the " Associated Company," and the Staten Island Edison Corporation, herein called the " Staten Island Company," are domestic corporations; and one, the New York Electric Company, herein called the " Delaware company," is a foreign corporation, organized under the laws of the State of Delaware. This last is a business corporation and not a gas, electrical or street railroad corporation. The stock relationship of these corporations is intimate. The petitioner owns ninety-nine per cent of the issued capital stock of the Staten Island Company. The Associated Company owns all of the capital stock of petitioner, except 4,600 shares. It organized and owns all of the capital stock of the Delaware company. Thus the Associated Company is the parent company of the other three. The petitioner's share capital issued was 4,600 shares of common stock with voting power and 41,884 shares of preferred stock without voting power in the election of directors and management of corporate affairs. Without the consent of the Public Service Commission the 4,600 shares of common stock of petitioner were transferred to the Delaware company. In 1927 the share capital of the petitioner was changed to 10,000 shares of common stock, with voting power, and 90,000 shares of preferred stock without voting power. As above stated, 4,600 shares of this common stock went to the Delaware company. In March, 1928, when the petition herein was filed, 46,484 shares had been issued, but the share capital of petitioner had been

increased to 150,000 shares, of which 90,000 was preferred stock without voting power as aforesaid and 60,000 common stock with voting power. The Delaware company was the owner of all the issued capital stock which had voting power as aforesaid.

Such was the relationship between the four interested corporations when the petition herein was filed asking authority to issue 38,250 additional shares of petitioner's common stock; also asking consent that it issue this additional stock to the Delaware company. Authority was granted to issue 30,810 shares of common stock. I understand that no serious complaint is made that the number of shares authorized is less than the number asked for. But the Commission refused consent to issue or sell this stock to the Delaware company.

If the authorized additional shares be issued, control of the petitioner's corporate affairs would not remain in the Delaware company unless it should acquire them or a majority of them. If the Delaware company be permitted to acquire these additional shares, it will not only have full control of petitioner, but will also acquire and hold more than ten per cent of its " total capital stock issued." Thus there can be no question but that the consent of the Commission is necessary before the Delaware company can " acquire, take or hold " these additional shares. This conclusion is not based upon any construction of section 70 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134); it is within the plain language and intent of that section. It is interesting to notice that, prior to the amendment of section 70 of the Public Service Commission Law by chapter 420 of the Laws of 1918, no stock corporation of any description could acquire or hold more than ten per cent of the total capital stock issued by a gas or electrical corporation, unless it already lawfully held a majority of the capital stock of such gas or electrical corporation. (Pub. Serv. Comm. Law, § 70, as amd. by Laws of 1911, chap. 788.) The Delaware company is a stock corporation; it does not hold a majority of the capital stock of the petitioner, which is an electrical corporation. Thus under this section as it then stood the Delaware company could not acquire or hold more than ten per cent of the capital stock of petitioner; the consent of the Commission would be of no avail. But by the amendment of 1918 a stock corporation was permitted, if it gets the consent of the Commission, to hold more than ten per cent of the capital stock of a domestic electrical corporation, provided that corporation is operated wholly outside the former First Public Service Commission district. Thus the policy of the State was changed but only as to a corporation operated wholly without

the First District. The petitioner is so operated. It is under this amendment solely that the consent of the Commission could validate the proposed purchase of this additional stock of petitioner. The refusal of consent presents the one question here: Was the Commission justified in refusing its consent?

The questions which may be determined by the Commission are stated in section 1304 of the Civil Practice Act. In *People ex rel. N. Y. & Queens Gas Co.* v. *McCall* (219 N. Y. 87) it was said: "The court has no power to substitute its own judgment of what is reasonable in place of the determination of the Public Service Commission, and it can only annul the order of the Commission for the violation of some rule of law.

" The Public Service Commissions were created by the Legislature to perform very important functions in the community, namely, to regulate the great public service corporations of the State in the conduct of their business and compel those corporations adequately to discharge their duties to the public and not to exact therefor excessive charges. It was assumed perhaps by the Legislature that the members of the Public Service Commissions would acquire special knowledge of the matters intrusted to them by experience and study, and that when the plan of their creation was fully developed they would prove efficient instrumentalities for dealing with the complex problems presented by the activities of these great corporations. It was not intended that the courts should interfere with the Commissions or review their determinations further than is necessary to keep them within the law and protect the constitutional rights of the corporations over which they were given control."

The Commission violated no rule of law material to its decision. The rule that ordinarily a stockholder has an inherent right to take a proportionate share of new stock issued for money only (*Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 296) has no application, but, if it had, would not aid this petitioner. The Delaware company, though a stockholder of petitioner, does not own all the issued stock. The Associated Company holds more of it. We find no legal right in the Delaware company to have this stock. The Commission did express its opinion that the plain intent of the Legislature was that the expression " more than ten per centum of the total capital stock issued " means stock with voting power. But this was said while discussing the transfer of the 4,600 shares to the Delaware company without consent and had no direct force in its decision of the issue here. The opinion shows that the Commission did not refuse its consent because of any particular con-

struction of the statute. It made its decision on the facts as presented, not on any rule of law.

Though the amended statute changed the policy of the State so as to, in this case, permit the Commission to grant the request, it did not thereby require it to; permission is not a command. The record discloses, and the Commission has recited, facts which justified it in exercising its discretion and refusing consent. Consent is not to be given as a matter of course. A petitioner for such consent has the burden of proof; it must satisfy the Commission that there are reasons which justify giving the consent. No such reasons appear in this record, while reasons for refusal of consent do appear. No explanation is made why the unusual classification of petitioner's stock was adopted. In the history of the companies presented, it arouses interest; it had a purpose. Is that purpose for or against the public interest? No reason is suggested why it is necessary, or advantageous to the public, to interpose the Delaware company in the line of stock owners. The Associated Company, owning all of the stock of the Delaware company, could elect its board of directors. Without the aid of the Delaware company it could do all in the management of the business of the petitioner and of the Staten Island Company which the Delaware company could do if it should obtain control of the stock of the petitioner. But it is urged that, to authorize the issue of the additional shares and at the same time to refuse consent that the Delaware company should acquire it, is substantially to refuse the relief asked. This is not a necessary conclusion. For all this record shows, the Associated Company, which owns the Delaware company, could purchase the additional stock of petitioner, as well as the Delaware company could. It is not unreasonable to infer that the Associated Company is furnishing capital to the Delaware Company, its subsidiary. There has been no request for, and no refusal of, consent that the Associated Company may acquire this additional stock. Nor has there been any effort to find another purchaser. It is common knowledge that such stocks are in great demand. On the other hand, there is reason why this foreign corporation should not be introduced; it, as one result, would occasion additional expense. The Delaware company must have an organization; it must have offices and officers; it must have employees; and the expense therefor must be paid. Whatever this additional expense is must be paid by the patrons of the petitioner. Whatever the Associated Company may receive from its ownership and control of the petitioner, the Staten Island Company and the Delaware company, can come to it only after the

expenses of those companies have been paid. It is to be presumed that some advantage is anticipated by the Associated Company through the organization and introduction of the Delaware company into the line of stock owners. What that advantage is is not disclosed. But the Delaware company is a foreign corporation, in no wise subject to the control of New York State. (See *People ex rel. D. & H. Co.* v. *Stevens*, 197 N. Y. 1.) It can regulate the great public service corporations of the State in the conduct of their business and compel those corporations adequately to discharge their duties to the public and not exact therefor excessive charges. It has some authority over all domestic corporations. That the other corporations are domestic corporations and subject to this control may not give to the Commission complete control of the service to be rendered and of the expenses incurred by them if the Delaware company is in control. The Commission was justified on this record as a matter of discretion in refusing its consent.

We have here no question as to the reasonableness of the application for consent to issue the additional stock; that the Commission has granted.

I think the following conclusions are justified: The determination of the Commission was not an unlawful or arbitrary exercise of power. There has been no violation of a rule of law by the Commission. Whether or not its understanding of the intent of the Legislature in enacting section 70 of the Public Service Commission Law is correct is immateral; it had full authority to make the determination it made. This determination protects the constitutional rights of the corporations concerned. Under no law or provision of the Constitution has the petitioner a right to the consent which is refused; the evidence in this record does not require consent.

The determination should be confirmed, with costs.

HILL, J., concurs.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the Commission to proceed in accordance with opinion.